**PICADILLY CAFETERIA OF WACO, Inc.,**
**Appellant,**

v.

**L. E. LEE, Appellee.**

**No. 15266.**

Court of Civil Appeals of Texas.

Dallas.

Jan. 18, 1957.

Rehearing Denied April 12, 1957.

Strasburger, Price, Kelton, Miller & Martin, and Royal H. Brin, Jr., Dallas, for appellant.

R. W. Shytles, Dallas, for appellee.

CRAMER, Justice.

Appellant's statement of the nature of the case, which appellee states is substantially correct, is as follows:

"This is a venue case in which appeal has been taken from the overruling of defendant's plea of privilege. Appellee L. E. Lee, as plaintiff, brought this suit against appellant Picadilly Cafeteria of Waco, Inc., as defendant, for damages for personal injuries to his wife, Mrs. L. E. Lee. Since suit was in Dallas County, defendant filed its plea of privilege in statutory form, asserting its privilege to be sued in McLennan County, its County of residence, where it maintained its principal office and place of business. In addition to the usual allegations, the plea of privilege also sets up a plea of res judicata on the basis of a previous suit upon the same cause of action which was dismissed while the plea of privilege was pending. Plaintiff filed a controverting plea and, after hearing, the District Court en-

tered its judgment overruling defendant's plea of privilege. From this judgment appeal has been duly perfected to this Honorable Court."

The record shows Mrs. Lee testified that the matters involved here occurred at the Picadilly Cafeteria located at 1501 Commerce Street and that it is a corporation. It briefs two points of error, in substance error in overruling its plea of privilege for the reason that (1) "venue herein was fixed in McLennan County by the taking of a nonsuit in the previous suit on the same cause of action while a plea of privilege was pending." (2) Lee failed to prove the existence of a cause of action against appellant which is necessary under both subds. 9a and 23, Art. 1995, Vernon's Ann.Civ.St.

Appellant's points are countered that there was no error in the court's action because (1) the order which dismissed the appeal in the previous suit was in effect an affirmance of the order overruling appellant's plea of privilege in the previous case. (2) Res judicata is not applicable in a venue case where a nonsuit was taken in a prior case involving the subject matter after a plea of privilege had been filed in such prior case and overruled by the court. (3) Theory of res judicata in a venue case after a nonsuit is taken by plaintiff is not applicable unless the parties are identical or in privity in the cases. (4) The evidence introduced by Lee clearly showed a cause of action against appellant, therefore the trial court did not err in overruling the plea of privilege.

All points and counterpoints will be considered together.

In addition to the statement by appellant we take judicial notice of our own judgments. On March 30, 1956, this Court in the prior suit referred to above and cited by appellant, after acquiring jurisdiction thereof by a properly perfected appeal, entered an order as follows:

"* * * It is, therefore, considered, adjudged and ordered that this court's former order setting the cause for submission on the merits be set aside, and that appellees' motion to dismiss the appeal be sustained, and the appeal is hereby accordingly dismissed without prejudice to appellant's right again to file its plea of privilege should appellees refile their suit and the same venue issue arise; and without prejudice to the right of either party to appeal from an adverse order of the trial court acting on the plea of privilege. * * *."

Our Chief Justice at that time wrote an opinion reported in 289 S.W.2d 790. No motion for rehearing was filed in that proceeding. Under the express terms of the judgment it is final and binding on all parties thereto and in our opinion controls the effect, in this proceeding, of the former judgment here sought to be asserted as res judicata in the present proceeding.

It is not only the duty of this Court to enforce its former order on this appeal, but, if proper application is made therefor, to enforce and protect judgment by proper writ or writs.

Mrs. Lee testified, material here, as follows:

"Q. Mrs. Lee, I direct your attention to August 25th, 1955, and ask you if upon that date you had occasion to visit the premises known as Picadilly Cafeteria which is located at 1501 Commerce Street, here in Dallas, Texas? A. I did.

"Q. What time of the day was it that you went into the Picadilly Cafeteria? A. A little after 4:30 in the afternoon.

"Q. What was the purpose of going there? A. To eat a meal.

"Q. What is the Picadilly Cafeteria? If I may ask, please Ma'am?

A. Well it is a place to eat, where they serve meals.

"Q. Did you secure food at the cafeteria? A. I did.

"Q. What particular items did you secure? A. I went down the line and I ordered coconut cream pie, meat loaf, mashed potatoes, a roll and iced tea.

"Q. Did you proceed to consume the same there on the premises? A. I did.

"Q. And what did you do next? If I may ask. A. I went up and paid my check. Paid my bill and walked out and went back to A. Harris's and went to work.

"Q. All right. After eating the food that you obtained at the Picadilly Cafeteria, did you become ill? A. I took an awful headache around 7, in the afternoon.

"Q. And you ate something like 4:30 in the afternoon? A. 4:30 in the afternoon.

"Q. At 7 o'clock. A. I began to have an awful headache and felt nauseated. But I worked on until 9.

"Q. Was that the normal quitting time, at 9 o'clock? A. Yes.

"Q. What day of the week was this? A. On a Thursday evening.

"Q. On Thursday you worked from what hours? A. 12:30 till 9.

"Q. And so you became ill around 7 o'clock in the evening? A. Took this headache and around 9:30 I started home.

"Q. Did you leave your place of employment at 9 o'clock? A. Yes, I did.

"Q. And where did you go? A. I went over and caught the bus and went home.

"Q. Did you feel ill upon the bus, while you were riding on the bus? A. I still had the headache. My head—it seemed like it just got worse all in the afternoon and when I stepped off the bus I became nauseated—very nauseated and I had to walk 2½ blocks to my home and by the time I got there I hardly knew what I was doing I was so nauseated. And I hardly got my clothes off until I started vomiting.

"Q. Did you vomit before you got home? A. No I did not.

"Q. Did you—did anyone meet you at the bus? A. My husband did.

"Q. Did you make complaint to him—A. Yes, I did.

"Q. Of this nauseation? A. I did.

"Q. After you got home did you try any kind of medication? A. I told my husband to bring me some warm salt water and let me drink that and see if I could vomit everything in me up. I was just about to die. And he brought me a glass of warm salt water and I drank that and then I began to just vomit one time right after another and I just continued to get sicker and sicker and sicker, and he called the doctor, and then he told him to give me warm soda water and I drank warm soda water.

"Q. The doctor gave instructions which were given to you? A. That's right. And they would get the soda water down me as much as they could between the times I was vomiting and going to the bathroom and I got to where I couldn't get to the bathroom any further. I would just faint and pass out. And I finally got just beyond knowing anything.

"Q. Mrs. Lee, when you went into the Picadilly Cafeteria did you see them prepare the food? A. No, I didn't.

"Q. You just went in and ordered—A. Ordered cafeteria style.

"Q. Cafeteria style? A. Yes.

"Q. You have no knowledge of any of the manners in which they prepared—A. No.

"Q. —the food? A. I do not.

"Q. And it was just served to you across the counter? A. That's right.

"Q. Had you eaten at the Picadilly Cafeteria before? A. One time before. They were very new and I had eaten there once before.

"Q. One time before. A. Yes.

"Q. That is all. * * *

"(On cross-examination) Q. What else did you eat or drink, if anything, that day? A. I ate my breakfast at home that morning about 8, and I didn't eat anything else that day.

"Q. Did you drink anything else that day? A. Nothing but just some water out of the hydrant at the store.

"Q. Pass the witness. A. I had to leave home about 12 in the day to get to work.

"Q. That is all."

Dr. Bradfield testified by deposition of his being called to treat Mrs. Lee. That she had objective symptoms of extreme nausea, frequency of bowel movements, abdominal cramping, pain, extreme prostration, sweating, and a pallor appearance. She told him while she was on the emergency room table at the hospital that she had eaten at the defendant's establishment, detailing the items she had eaten, and told him when she had eaten there. He concluded that she was suffering from food poisoning and that the food eaten at defendant's cafeteria was the cause of the poisoning.

Such evidence made out a prima facie showing of appellee's right to maintain suit in Dallas County.

Under such record and the recital of Judge Dixon as follows, "Therefore our order dismissing the appeal will be without prejudice to appellant's right again to file its plea privilege should appellees refile their suit and the same venue issue arise; and without prejudice to the right of either party to appeal from an adverse order of the trial court acting on the plea of privilege," we must overrule appellant's points and sustain appellee's counterpoints.

Finding no reversible error in appellant's points, the trial court's judgment is

Affirmed.

### Majority Opinion on Rehearing

DIXON, Chief Justice.

I respectfully dissent. In my opinion appellant's motion for rehearing should be sustained, and we should reverse and remand the cause to the trial court with directions to sustain appellant's plea of privilege.

■ In his first counterpoint on appeal appellee takes the position that our dismissal of the former appeal was in effect an affirmance of the trial court's order overruling appellant's plea of privilege rendered in the previous case. I do not agree.

We dismissed the former appeal because the venue question then before us had become moot and the issues presented by the appeal were no longer before us for adjudication, due to the fact that appellees, while the appeal was pending, had taken a nonsuit. At the time of our dismissal appellees had not refiled their suit. We stated that we had no authority to determine the venue of a non-existent suit. We further stated that our dismissal was without prejudice to the right of appellant to file another plea of privilege, and without prejudice to the right of either party to appeal from an adverse ruling should suit be filed again by appellees. Picadilly Cafeterial of Waco, Inc., v. Lee, Tex.Civ.App., 289 S.W.2d 790. Certainly there was no

intention on our part when we dismissed the first appeal to affirm the trial court's judgment on the venue question which was the subject of the appeal. Nor was there any intention on our part to grant, enlarge, or take away any rights which might be available to either party in the trial court as a consequence of the nonsuit taken by appellees.

■ In its first point on appeal appellant says that venue was fixed in McLennan County by appellees' taking a nonsuit in the previous suit while a plea of privilege was pending. I believe appellant is correct. As a consequence of their taking a nonsuit in the first action before final adjudication was had on appellant's plea of privilege, appellees have lost the right to relitigate the venue question in their second suit. Tempelmeyer v. Blackburn, 141 Tex. 600, 175 S.W.2d 222; First Nat. Bank v. Hannay, 123 Tex. 203, 67 S.W.2d 215; Slack v. Allen Military Academy, Tex.Civ.App., 289 S.W.2d 783; Clifton v. Price, Tex.Civ. App., 88 S.W.2d 783. Appellant's first point should be sustained.

The applicable rule is stated in McDonald, "Texas Civil Practice", sec. 4.62 as follows: "If in the former action the defendant timely filed his plea of privilege asserting the right to be sued at his domicile, and thereafter the plaintiff took a nonsuit, it is held that the venue is thereby fixed in the county of the defendant's domicile * * *."

Though the doctrine has frequently been called res adjudicata, according to McDonald it is not really a matter of res adjudicata. We again quote from his Sec. 4.62: "The rules here stated are grounded not upon a true application of that doctrine, but rather upon a principle of policy: The defendant should not be subjected to the repeated expense of presenting his venue claim in successive actions by plaintiff who, through the abuse of his privilege of taking a nonsuit, prevents a final adjudication upon the question."

■ The rule is applied as long as the plea of privilege is pending at any stage and

no final adjudication has been reached. Clark, "Venue in Civil Actions in Texas." Ch. 36, sec. 1a and sec. 3a.

Appellee argues in his second counterpoint that the above cited cases are not applicable here because they each have to do with a fact situation in which a plea of privilege had been sustained before plaintiff took a nonsuit in the first suit, which order sustaining the plea became res adjudicata when the nonsuit was taken. But in this case, says appellee, the court had overruled appellant's plea of privilege in the first suit when the nonsuit was taken by appellees; therefore the rule of res adjudicata cannot be invoked in appellant's favor in the second suit.

I cannot accept appellee's argument for two reasons: (1) As heretofore pointed out the doctrine here invoked is not really the rule of res adjudicata; (2) the trial court's order overruling the plea of privilege was not a final adjudication of the venue question. Appellant had taken an appeal which was still pending at the time appellees took their nonsuit; so the venue issue had not been finally adjudicated but was still pending, awaiting final adjudication on appeal. The fact situation thus presented is analogous to a situation where a plea of privilege has been filed and a controverting plea has also been filed, but there has not yet been any adjudication of the venue question. Under such circumstances the rule has been applied. First Nat. Bank v. Hannay, 123 Tex. 203, 67 S.W.2d 215; J. H. Robinson Truck Lines v. Kerksey, Tex.Civ. App., 219 S.W.2d 844; Clifton v. Price, Tex.Civ.App., 88 S.W.2d 783.

■ In his third counterpoint appellee argues that the rule is not applicable in the instant case because the parties in the first suit and in this suit are not identical. The original petition in the first suit began with the words, "Mrs. L. E. Lee, joined pro forma by her husband, L. E. Lee," and prayed for damages for personal injuries sustained by Mrs. Lee; the present suit was brought by L. E. Lee alone, though it is for damages for the same injuries.

However in the succeeding papers in the first suit the case was styled by appellees "Mrs. L. E. Lee et vir v. Picadilly Cafe of Waco, Inc." Also, appellees' controverting plea in the first case began "Now comes Mrs. L. E. Lee and her husband L. E. Lee, plaintiffs in the above entitled and numbered cause." In the controverting plea in the first suit it is also stated that "Plaintiffs deny" the allegations in the plea of privilege; and appellees' attorney upon oath stated that "he is the attorney of record for plaintiffs in the above entitled and numbered cause." In fact, so far as we have been able to determine, the words "pro forma" were used in the first suit only in appellees' original petition. Throughout the rest of the record in the original suit, Mrs. L. E. Lee and her husband L. E. Lee were both referred to as plaintiffs. This is true of the motion to dismiss the first appeal in this Court, which motion begins: "Now comes Mrs. L. E. Lee and her husband, L. E. Lee, Appellees in the above entitled matter, and respectfully move the Court to dismiss the appeal of this cause on the ground that no actual controversy exists, the said Appellees having taken a nonsuit * * *."

Clearly the true parties in interest are the same in the first suit and in this suit. The defect in pleading in the first case, being merely a formal defect, was waived by a failure to object. Breckenridge Ice & Cold Storage Co. v. Hutchens, Tex.Civ. App., 260 S.W. 684. Under the circumstances here present the husband, though joined pro forma in the original petition in the first suit, was sufficiently before the court to make the order of nonsuit binding on him. Wade v. Wade, 140 Tex. 339, 167 S.W.2d 1008; Gist v. Tsesmelis, Tex.Civ. App., 153 S.W.2d 277; Bullock v. Englert, Tex.Civ.App., 125 S.W.2d 663.

I think the motion for rehearing should be sustained and the cause transferred to McLennan County, Texas, for trial.

YOUNG, J., concurs in the view above expressed; that is, that the motion for re-hearing should be sustained and the cause transferred to McLennan County for trial on the merits.

DIXON, Chief Justice.

Since Justice YOUNG concurs with me in the views above expressed, my dissenting opinion becomes the majority opinion on rehearing.

Appellant's first point on appeal is sustained. Our judgment heretofore entered affirming the case is set aside and judgment is here entered reversing the trial court's judgment and remanding the cause to the trial court with instructions to transfer the suit to McLennan County.

CRAMER, J., dissenting.

CRAMER, Justice (dissenting on rehearing).

The opinion of Chief Justice DIXON on rehearing has, with the concurrence of Justice YOUNG, now become the majority opinion. As I am still of the belief that the judgment of the trial court should be affirmed, I respectfully dissent.

The order here which dismissed the first appeal, as stated in our original opinion was "without prejudice" to again file its plea of privilege should appellees refile their suit and the same venue issue arise.

Without such provision in the judgment of course the rule of res adjudicata would have been applicable and properly applied to this case. Tempelmeyer v. Blackburn, 141 Tex. 600, 175 S.W.2d 222. However with such provision in the decree if admissible that it was without prejudice changes the situation and removes the bar of res adjudicata in this suit. See 45 Words and Phrases, Without Prejudice, p. 439 and the Pocket Part; Freidenbloom v. McAfee, Tex.Civ.App., 167 S.W. 28, syl. 1 (error ref.); 24 Tex.Digest, Judgment, ⏦565 p. 386. In the Freidenbloom case, supra [167 S.W. 29], the court held:

"The first assignment of error complains of the action of the trial court in overruling the demurrer to the plea of res adjudicata. The judgment in the former suit was entered, sustaining the plea in abatement, and, by an examination of [the case], it will be noted that the former suit was dismissed at the cost of the plaintiff, without prejudice to the rights of the plaintiff to file a new suit. We are of opinion that the provision in the judgment that the suit be dismissed without prejudice to the rights of the plaintiff to file a new suit would permit him to file such other suit, and that such judgment would not be a bar to a new action."

While I am aware of the conflict between my views as here expressed and the holding in Slack v. Allen Military Academy, Tex. Civ.App., 289 S.W.2d 783, I believe the weight of authority supports my position in the matter.

For the reasons stated, the motion for rehearing should be overruled.